[CB1] 
 
 
 




 

 

 

 

 

 

                                      COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO. 2-09-027-CR

 

 

LOGAN MYLES ROBINSON                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT
NO. 3 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Through two points of error, appellant Logan
Myles Robinson appeals his conviction and thirteen-year sentence for sexual
assault.  See Tex. Penal Code Ann.
' 22.011 (Vernon Supp. 2009).  We affirm.

Background
Facts








In 2005, a Tarrant County grand jury indicted
Robinson for sexually assaulting Angela, his ex-wife.[1]  The parties filed various pretrial documents,
and then under a plea bargain with the State, Robinson pled guilty, waived
certain constitutional and statutory rights, and entered a judicial confession.
The trial court deferred its adjudication of Robinson=s guilt, placed him on ten years of community
supervision, and delineated several conditions of the community supervision.








In 2007, the State petitioned the trial court to
proceed to its adjudication of Robinson=s guilt. 
The State amended its petition in 2008; the amended petition alleged
that Robinson had violated his community supervision conditions by committing a
new offense, not maintaining suitable employment, not notifying law enforcement
that he changed addresses, failing to pay certain costs and fees associated
with his case, and not attending sex offender treatment.  In the hearing on the State=s amended petition, Robinson pled true to failing
to pay costs and fees and pled not true to the other allegations. The State
called witnesses to testify about the allegations in the petition that Robinson
had not pled true to.  The trial court
found all of the allegations true, convicted Robinson of sexual assault, and
after hearing evidence related to his punishment,[2]
assessed thirteen years=
confinement.  Robinson filed his notice
of this appeal.

Robinson=s Points of Error

In Robinson=s two points, which he briefs together (and which
we will therefore resolve together), he argues that the trial court erred by
limiting his cross-examination of Angela during the adjudication hearing, by
refusing to grant a continuance to secure Angela=s testimony during the punishment hearing after
he attempted but failed to subpoena her, and by adjudicating him guilty.  Robinson contends that the trial court should
have allowed his questioning of Angela regarding details of the underlying
sexual assault because he was trying to establish his innocence in accordance
with an application for a writ of habeas corpus that he had filed.[3]









The
limitation of cross-examination during the adjudication hearing

Robinson first contends that the trial court
erred by limiting his cross-examination of Angela during the adjudication
hearing on the State=s
amended petition.  He specifically argues
that the court denied his due process rights of cross-examination and confrontation.

The State called Angela to testify about the
first paragraph of its amended petition to adjudicate.  When Robinson attempted to cross-examine
Angela about details of the sexual assault rather than issues related to the
State=s amended petition, the State objected on
relevance grounds and the trial court indicated that it was not going to allow
any questioning regarding the underlying offense during the adjudication
hearing.  The trial court told Robinson=s counsel, however, that he could go into the
merits of the writ application and call Angela as a witness during the
punishment portion of Robinson=s trial. 
Robinson=s
counsel indicated his acceptance of that solution and told the court that he
had no more questions for Angela at that time.








The Sixth Amendment gives a defendant the right
to be confronted with the witnesses against him.  U.S. Const. amend. VI; Crawford v.
Washington, 541 U.S. 36, 42, 124 S. Ct. 1354, 1359 (2004).  And that right includes the qualified right
to cross-examine those witnesses.  See
Davis v. Alaska, 415 U.S. 308, 315B16, 94 S. Ct. 1105, 1110 (1974); Hammer v.
State, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009); Walker v. State,
300 S.W.3d 836, 844B46
(Tex. App.CFort
Worth 2009, pet. ref=d)
(citing Lopez v. State, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000)).

However, to preserve a complaint for our review,
a party must have presented to the trial court a timely request, objection, or
motion that states the specific grounds for the desired ruling if they are not apparent
from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert. denied, 526 U.S. 1070
(1999).  Further, the trial court must
have ruled on the request, objection, or motion, either expressly or
implicitly, or the complaining party must have objected to the trial court=s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v.
State, 138 S.W.3d 334, 338, 341 (Tex. Crim. App. 2004).








Preservation of error is a systemic requirement
that this court should review on its own motion.  Archie v. State, 221 S.W.3d 695, 698
(Tex. Crim. App. 2007).  Preservation
requirements apply to confrontation clause complaints.  See Reyna v. State, 168 S.W.3d 173,
179B80 (Tex. Crim. App. 2005); Paredes v. State,
129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (overruling the appellant=s constitutional confrontation clause points
because he did not preserve error related to the confrontation clause at
trial); Campos v. State, 186 S.W.3d 93, 98 (Tex. App.CHouston [1st Dist.] 2005, no pet.) (explaining
that the Aright
of confrontation is vital to an ordered criminal justice system, but it is
nonetheless a trial right, and a defendant waives his right to confront witnesses
if he does not object at trial@); Courson v. State, 160 S.W.3d 125, 129
(Tex. App.CFort
Worth 2005, no pet.).








Robinson did not assert any constitutional
violationCrelated
to the confrontation clause, the related right of cross-examination, or
otherwiseCwhen
the trial court told him that he would not be permitted to ask Angela questions
about the sexual assault during the adjudication hearing.[4]  The dissenting opinion correctly indicates
that the code of criminal procedure does not require a separate punishment
hearing during an adjudication proceeding and that, functionally, an
adjudication proceeding is unitary.  See Euler v. State, 218 S.W.3d 88, 92
(Tex. Crim. App. 2007); Griffith v. State, 166 S.W.3d 261, 265 (Tex.
Crim. App. 2005); Dissenting Op. at 1B3.  But
that legal principle is irrelevant to this case because Robinson did not object
to the trial court=s
continuing or segregating his adjudication proceeding and has not raised such
as error on appeal.  Rather, Robinson
consented to the trial court=s continuance of the punishment hearing from
October 2008 to January 2009 because he requested a presentence investigation
report to be prepared before the trial court ordered the terms of its sentence.[5]  And Robinson obviously recognized the need to
ensure his witnesses=
presence at the hearing in January 2009 because he sought subpoenas for two
witnesses, including Angela.[6]








The dissenting opinion has not disputed that
Robinson was required to preserve confrontation clause complaints and that he
did not do so.  Based on the authority
cited above, we hold that Robinson forfeited his assertion that his rights were
violated during the adjudication hearing, and we overrule that part of his two
points.

The
absence of Angela=s
testimony during the punishment hearing

The punishment hearing in Robinson=s trial was held in January 2009, almost three
months after the trial court found him guilty in October 2008.  On January 23, 2009, Robinson filed an application
to subpoena Angela to appear at the punishment hearing, but the application did
not include her location or any of her contact information.  At the beginning of the punishment hearing,
Robinson=s counsel told the court that Angela had not been
served with the subpoena but that his investigator had talked to Angela.  Robinson=s counsel orally requested a continuance to find
Angela so that she could provide testimony that would support his writ
application and mitigate his punishment by showing the Aseverity of the effect upon the victim.@  Robinson
contends on appeal that the trial court erred by denying the continuance.[7]








The code of criminal procedure provides, AA criminal action may be continued on the written
motion of the State or of the defendant, upon sufficient cause shown.@  Tex. Code
Crim. Proc. Ann. art. 29.03 (Vernon 2006) (emphasis added).  Accordingly, the denial of an oral motion for
continuance preserves nothing for our review. 
Anderson v. State, 301 S.W.3d 276, 278B81 (Tex. Crim. App. 2009) (holding that a court
of appeals erred by applying a due process exception to the motion for
continuance preservation requirement and concluding that the Aright to present a defense is subject to
forfeiture@);
Williams v. State, 172 S.W.3d 730, 733 n.1 (Tex. App.CFort Worth 2005, pet. ref=d); Ricketts v. State, 89 S.W.3d 312, 317
(Tex. App.CFort
Worth 2002, pet. ref=d)
(citing Dewberry v. State, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999), cert.
denied, 529 U.S. 1131 (2000)).  

As the dissent argues, article 29.13 of the code
of criminal procedure provides,

A continuance or postponement may be granted on
the motion of the State or defendant after the trial has begun, when it is made
to appear to the satisfaction of the court that by some unexpected occurrence
since the trial began, which no reasonable diligence could have anticipated,
the applicant is so taken by surprise that a fair trial cannot be had.

 









Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2006); see Dissenting Op.
at 8.  But this provision does not
address or remove the requirement that a motion for continuance must be in
writing.  The court of criminal appeals
and our court have both applied the in-writing requirement to motions for
continuance filed during a trial.  See
Dewberry, 4 S.W.3d at 755B56; Matamoros v. State, 901 S.W.2d 470,
478 (Tex. Crim. App. 1995); Woodall v. State, 77 S.W.3d 388, 401 (Tex.
App.CFort Worth 2002, pet. ref=d); see also Tex. Code Crim. Proc. Ann.
art. 29.08 (Vernon 2006) (stating that A[a]ll motions
for continuance must be sworn to@) (emphasis added); Dixon v. State, 64
S.W.3d 469, 473 (Tex. App.CAmarillo 2001, pet. ref=d) (stating that an Aoral motion for continuance during trial does not
preserve error for appellate review, even in the face of an assertion that the
Court=s equitable powers allow consideration of the
issue@).[8]








Therefore, we hold that Robinson=s oral motion for continuance preserved nothing
for our review, and we overrule that portion of his two points.[9]

The
trial court=s
decision to adjudicate Robinson guilty








Finally, in the title of one of Robinson=s points of error, he argues that the trial court
Aabused its discretion in adjudicating [him]
guilty.@  However,
he does not specify why the trial court abused its discretion beyond his
assertions about his constitutional rights and his oral continuance request,
which we have already resolved. 
Furthermore, Robinson has not directly challenged the sufficiency of the
evidence to prove the allegations contained in the State=s amended petition.  Although he cites law in a portion of his
brief related to a trial court=s ability to revoke community supervision for
failure to pay fees when the defendant is unable to pay, he did not present
inability to pay as a defense at trial. 
Because Robinson=s
general contention that the trial court abused its discretion by adjudicating
him guilty is inadequately briefed, we overrule that portion of his two
points.  See Tex. R. App. P.
38.1(i); Tong v. State, 25 S.W.3d 707, 710 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 1053 (2001); Harkins v. State, 268 S.W.3d 740, 742
n.2 (Tex. App.CFort
Worth 2008, pet. ref=d).

Conclusion

Having overruled both of Robinson=s points, we affirm the trial court=s judgment.

 

TERRIE
LIVINGSTON

JUSTICE

 

PANEL: 
LIVINGSTON, DAUPHINOT, and WALKER, JJ.

 

DAUPHINOT, J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED: 
April 1, 2010

 

 

 

 

 

 

 

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                                COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO. 2-09-027-CR

 

 

LOGAN MYLES
ROBINSON                                                    APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

        FROM CRIMINAL DISTRICT COURT NO. 3 OF
TARRANT COUNTY

 

                                              ------------

 

                                  DISSENTING OPINION

 

                                              ------------

I write separately
because I cannot agree with the majority that Appellant somehow forfeited his
right to offer evidence of actual innocence or mitigation evidence.

 A revocation is a unitary proceeding.  As our sister court in Dallas has
explained,  








When
a person enters a plea of guilty, the proceeding becomes a unitary
proceeding.  This applies regardless of
whether the plea is entered before a judge or a jury.  As the court of criminal appeals has noted,
once an appellant enters a guilty plea, the court should conduct the trial as a
unitary proceeding rather than allowing the defendant to Apiecemeal@ his plea of guilty and true.[1]

 

When a defendant pleads guilty to a
criminal offense and is placed on community supervision after the judge defers adjudication,
the trial becomes a unitary proceeding.[2]  The Texas Court of Criminal Appeals has
explained, 

The
bifurcated‑trial procedure that the district court used is not authorized
in a trial without a jury.  Prior to the
1965 Code of Criminal Procedure all trials before the court or jury regardless
of plea were unitary trials; that is, the issues of guilt and punishment were
submitted at the same time.  A bifurcated
trial procedure was authorized in the 1965 revision of the Code of Criminal
Procedure. The bifurcation statute provides, AIn all criminal cases, other than
misdemeanor cases of which the justice court or municipal court has
jurisdiction, which are tried before a jury on a plea of not guilty, the judge
shall, before argument begins, first submit to the jury the issue of guilt or
innocence of the defendant of the offense or offenses charged, without
authorizing the jury to pass upon the punishment to be imposed.@ 
The bifurcation statute is applicable only to pleas of not guilty before
a jury.  The statute has no application
to a trial before the court on a plea of not guilty.  This is not the first case in which courts
have failed to notice that the bifurcation statute applies only to pleas of not
guilty before a jury.

 








[S]ome
confusion has existed among the bench and bar since the advent of Article
37.07.  Records reaching this court
frequently show courts bifurcating bench trials where the plea is guilty.  Often the court will hear evidence, declare
the defendant guilty, order a pre‑sentence investigation and sometimes
months later re‑convene the Apenalty stage@ of the guilty plea, allowing the State and defense to
offer evidence as to punishment or guilt.[3]

 

Contrary to the
thoughtful majority=s repeated designation of separate phases
or portions of the trial, there was only a single, unitary proceeding.
Consequently, no one returned to court for a punishment portion or phase or
segment or part of the trial.  If, as the
majority insists, the participants did return for a punishment portion or
segment or part, then the trial court committed error by bifurcating a unitary
proceeding.








The effect of the
trial=s becoming a unitary
proceeding is that the issues of guilt and punishment cannot be separated.[4]  The trial court therefore erred by denying
Appellant his constitutional Sixth Amendment right to cross-examine the State=s witness and by
requiring Appellant to wait for the Apunishment phase@ in a unitary
proceeding that had no punishment phase. 
I can find no law that requires a party to a lawsuit, and certainly a
criminal lawsuit, to issue a subpoena to a witness who is present in the
courtroom, under oath, and subjected to direct examination by the opposing
party in order to cross-examine that witness. 
The Texas Court of Criminal Appeals has explained repeatedly that 

[f]airness
would dictate that a defendant be accorded an opportunity to offer appropriate
evidence in mitigation of punishment after the revocation of probation and the
adjudication of guilt and before the assessment of punishment if such evidence
has not already been elicited during the proceedings, particularly if the
defendant requests the opportunity.[5]

 

Here, the trial
court was well aware that Appellant wanted to fully cross-examine the witness
in order to offer evidence of actual innocence or mitigation evidence that
lessened his moral culpability.  He
attempted to offer this evidence in cross-examination of the State=s witness.  The trial court refused to allow him to
develop this evidence on cross-examination and told Appellant that he would
have to wait until the Apunishment phase.@  The witness was never released.  Indeed, when the trial court asked if the
witness could be released before Appellant had the opportunity to complete
cross-examination, the prosecutor responded, AI=d ask she stick
around, Judge.@[6]  

As this court has
previously explained, 








We review the trial court=s decision to exclude evidence
under an abuse of discretion standard. 
An abuse of discretion occurs when the trial court acts without
reference to any guiding principles or rules.

 

Where the excluded evidence is sought during cross‑examination,
the Confrontation Clause of the United States Constitution is implicated.   Errors of this sort are subject to a harm
analysis, and must be reversed unless the court finds, beyond a reasonable
doubt, that the error did not contribute to the conviction or punishment.[7]

  

But denial of the
right to cross-examine witnesses may also be a due process violation when it
prevents a defendant from offering evidence of actual innocence or punishment
mitigation evidence and brings into question the fundamental fairness of a
trial.  As the Texas Court of Criminal
Appeals has so eloquently explained, 








Due process does not lend itself to simple, concise
definitions.  In its most basic sense due
process is the impediment that is constitutionally imposed on governmental
conduct that offends our fundamental rights. 
Relative to the protection of one=s liberty:  A[t]he essential guarantee of the
due process clauses is that the government may not imprison or otherwise
physically restrain a person except in accordance with fair procedures.@ 
In other words, due process is in itself essentially the same as
fairness.  Or, at the very least, due
process is the vehicle used to arrive at fairness thereby protecting our
fundamental rights. Accordingly, Aa fair trial in a fair tribunal is a basic requirement of
due process.@ 
If legislation alters the essential fairness of a trial then a due
process violation is necessarily implicated. 
In Estelle v. Williams, it was specifically stated that A[t]he right to a fair trial is a
fundamental liberty secured by the Fourteenth Amendment.@[8]

 

Or,
in other words, 

 

The touchstone of due process is fundamental fairness.
Accordingly, no State may deprive any person of the conditional liberty created
by probation unless the State employs procedures that are fundamentally fair.[9]

 

In its
conscientious analysis, the majority concentrates on the propriety of the trial
court=s bifurcating the
proceeding rather than on the trial court=s refusal to allow
Appellant to offer mitigating evidence or evidence of actual innocence when the
State=s witness was in
court, on the stand, and available for cross-examination.  The majority holds that this error is
harmless because Appellant failed to use the magic words Aconfrontation and
cross-examination.@ Appellant was in the middle of
cross-examination.  He tried to complete
his cross-examination.  The State
objected, and the trial court sustained the objection on the basis that
Appellant had to wait until the Apunishment phase@ to offer his
punishment evidence.  No one was confused
about what Appellant was requesting or why.








The error was less
a Sixth Amendment issue than a due process issue. It cannot be said that
Appellant did not clearly voice his complaint or that anyoneCthe trial court,
the State, or this courtCwas and is not fully aware of Appellant=s complaint.  He tried to offer evidence in mitigation of
punishment or evidence of actual innocence, and he was not allowed to do
so.  He was therefore denied fundamental
due process.  AThe Due Process
Clause of the Fourteenth Amendment prohibits criminal rules or procedures that
offend traditional notions of fair play and substantial justice.@[10]  








The proper
analysis of this error is under rule 44.2(a) because the error is of
constitutional dimension.[11] It is of constitutional
dimension, in part, because denial of the constitutional right to complete
cross-examination of a witness in order to present evidence in mitigation of
punishment or evidence of actual innocence is also a denial of due
process.  It is difficult to understand
how denying Appellant the opportunity to present evidence of actual innocence,
or even evidence in mitigation of moral culpability, could be harmless error
under the facts of this case.  

Nor can I agree
that Appellant, who had no obligation to subpoena the witness in order to claim
his right to cross-examine, can be faulted for failing to file a written, sworn
motion for continuance.  Although the
written, sworn motion is required for a pre-trial continuance request, after
trial begins, 

A continuance or postponement may be granted on the motion
of the State or defendant after the trial has begun, when it is made to appear
to the satisfaction of the court that by some unexpected occurrence since the
trial began, which no reasonable diligence could have anticipated, the
applicant is so taken by surprise that a fair trial cannot be had.[12]

 

Presumably, the legislature realized that a party
who is surprised during trial does not show up in the courtroom with a prepared
motion for continuance complete with affidavit on the off chance that something
unexpected will occur.  Surely the trial
court=s assuring
Appellant that he would be allowed his constitutional right to complete his
cross-examination of the State=s witness in order
to offer punishment mitigation evidence or evidence of actual innocence after
the trial court improperly bifurcated a unitary proceeding would be an
unexpected occurrence triggering article 29.13 protections.  And surely a defendant in a criminal trial
has the right to rely on the trial court=s promise.  








We have not yet
reduced our criminal trials to triumphs of form over substance.  The grounds for the request for continuance
were clear and uncontroverted.  Appellant
made his request in open court and on the record. The request was taken down by
the court reporter and appears in the reporter=s record.  If Appellant had been requesting a jury
instruction, the writing requirement would have been satisfied by dictating it
into the record.  Yet the majority holds
that because the request for continuance appears in the reporter=s record instead
of being handwritten on a yellow legal pad, it is no motion at all.  And the majority also holds that when the
court, the State, and the defendant all know the basis of a request for
continuanceCand that basis is clear and uncontrovertedCand both sides
argue the motion to the trial court, that nothing has been preserved for
review.








 The majority relies on Anderson v. State[13]
for the proposition that the denial of an oral motion for continuance preserves
nothing for review and notes that the Texas Court of Criminal Appeals holds
that the court of appeals erred by applying a due process exception.[14]  But the facts of this case distinguish it
from Anderson.  That case involves
a pretrial motion for continuance, not a trial court=s deliberate
truncation of an appellant=s
cross-examination of a witness and erroneous and false assurance that the
cross-examination would continue in a later, fictitious Apunishment phase.@

Our sister court
in Texarkana has addressed this issue in a manner which I believe comports with
constitutional mandates:

 The purpose of requiring a sworn motion is to
give credibility to the basis for the continuance.  This would seem unnecessary when a matter is
fully before the trial court.  In this
situation, the trial court would not need sworn pleadings to support the
motion, but could consider testimony and support of the motion or the facts
already before the court.  A mandatory rule
that all continuances must be in writing is a harsh requirement on parties in
trial at the time the matter arising for which the continuance is sought.  To have an opportunity to place the motion in
writing and have it sworn to would sometimes require a delay of the trial until
that matter could be completed, and the trial could often be expedited by
allowing this motion to be oral and recorded by a court reporter.[15]

 

Although the Rodriguez court affirmed the
action of the trial court, the statutory requirement of a sworn motion for
continuance does not supercede the constitutional requirement of a fair
trial.  This fact has been recognized by
our sister court in Dallas and by the Supreme Court of Texas.  








In Thrower
v. Johnston,[16] the
trial counsel had a preferential setting in a different court in a different
county.  The trial court denied Thrower=s unverified request to reset the case and defaulted Thrower when his
counsel did not appear at the scheduled time but arrived in court as quickly as
he could, given the conflict.  In
reversing the trial court, the Dallas Court of Appeals pointed out that

 

the want of verification does no more than raise
or reinforce the presumption that the trial court committed no abuse of
discretion. Considering the information that was provided to the court below of
the conflict in district and county court settings, we hold that appellants
rebutted the presumption that the trial court did not abuse its discretion, a
burden placed upon them by the foregoing rules.[17] 

 

 








In reversing the trial court, the Thrower
court relied on the Supreme Court of Texas=s decision in Villegas v. Carter.[18]  In Villegas, the trial court allowed
counsel to withdraw two days before trial. 
Villegas was unable to engage counsel who could be prepared for trial in
such short time, especially in light of the fact that the first attorney
refused to turn over the file.  The Villegas
court balanced the valuable right to be represented by counsel in a civil case
against the abuse of discretion standard and held that the trial court abused
its discretion when it allowed counsel to withdraw two days before trial and
then denied Villegas=s
unsworn and apparently oral motion for continuance.[19]  The court suggested that in determining whether
the trial court abused its discretion in denying the unsworn motion for
continuance, we consider the role that the trial court played in creating the
basis for the request for continuance.[20]  The Villegas court implies that it is
fundamentally unfair to require a person to go to trial without a lawyer when
the trial court both allowed counsel to withdraw at the eleventh hour and
denied the non-compliant request for continuance.[21]

The law governing motions for change of venue is
also instructive:

A defendant=s proper
motion to change venue entitles him to a change of venue as a matter of law
unless the State files controverting affidavits.  The reason for this rule is that Ain the absence of controverting evidence, there is no issue of fact
to be resolved.@  However, this right is waived
by the defendant if he participates in a hearing on the merits of the motion
and allows the State to put on evidence in such hearing, consequently rendering
the issue one of fact for determination by the trial court.[22]

 

 








In the instant case, there is no issue in
controversy.  The issue was presented to
the trial court when the witness took the stand and when the witness failed to
appear.  Both the State and Appellant
participated in arguing the request to the trial judge.  Requiring Appellant to request a recess while
he reduced what was already taken down by the court reporter at both hearings
to a handwritten, yellow-pad motion when the witness failed to appear, and
requiring Appellant to write out an affidavit stating what everyone was aware
of and what was completely uncontroverted, frankly, is not rational.  When the interests of due process and
technical compliance with a rule that should be satisfied by allowing either
the State or the defendant to dictate a motion or request into the record in
satisfaction of a writing requirement conflict, the due process interest must
prevail.

Whether an oral,
unsworn motion for continuance is different from a written, sworn motion for
continuance, in that one is an equitable motion and the other is a statutory
motion, is the subject of conflicting opinions. 
But courts are in agreement that an improper denial of a motion for
continuance may constitute a denial of due process.  In a Fifth Circuit case, the court explained,
in the context of the impact of the denial of a continuance on the right to
counsel,








Initially, the determination of when to allow a
continuance is committed to the deliberate discretion of the trial judge. The
trial judge must steer clear of the Scylla and Charybdis of extremes.  At one extreme, Aa myopic insistence upon expeditiousness in the face of a justifiable
request for delay can render the right to counsel an empty formality.@ . . .  While discretion is the
rule of general application grounded in precedent, tradition and common sense,
discretion can be abused. Viewing all the circumstances surrounding the trial
court=s decision, in the unusual case the denial of a continuance may be so
arbitrary and so fundamentally unfair as to do violence to the Constitutional
principle of due process.[23]

 

In the case now
before this court, any delay was occasioned by the trial court=s action in
refusing to allow Appellant to complete cross-examination of the State=s witness immediately
after direct examination. 

I recognize that
the issue may become moot if Appellant receives habeas relief, but I cannot
agree with the majority=s holding, explicit or implicit, that the
trial court properly bifurcated the adjudication proceeding and that Appellant
was required to subpoena the witness before being allowed to cross-examine her
despite the State=s having conducted its direct examination
of her and the 

trial court=s never releasing
her.  I therefore respectfully dissent.

 

 

LEE ANN DAUPHINOT

JUSTICE








PUBLISH

 

DELIVERED:  April 1, 2010

 

 











[1]Robinson was married to Angela at the time of the assault, but they
are now divorced.





[2]During the punishment hearing, the State presented a presentence
investigation report, and Robinson called his sister and his mother, among
other witnesses. 





[3]None of Robinson=s points of error, his notice of appeal, nor his two motions for new
trial expressly challenge the trial court=s decision to
deny his writ application.





[4]Robinson mentioned the rights of confrontation and cross-examination
in his second motion for new trial, but he related those rights to the use of
hearsay statements in the presentence investigation report and not to any
issues occurring in the adjudication hearing.





[5]Regardless of whether Robinson=s petition to
adjudicate hearing should have occurred in two phases, it is
indisputable that it did occur in two phasesCoccurring months apartCbecause of
Robinson=s request that the probation department prepare a presentence investigation
report. The dissenting opinion=s statement
that Ano one returned to court for a punishment portion . . . of the trial@ is not supportable under the record in this case.  Dissenting Op. at 3.





[6]The dissenting opinion=s statement
and conclusion that the trial court denied Robinson due process because it prevented
his opportunity to offer appropriate evidence simply is not borne out by this
record.  See Dissenting Op.
at 4B8.  The trial court expressly
agreed to let Robinson call Angela to testify about the nature of
Robinson=s offense during the upcoming punishment portion of the trial rather
than in the initial revocation portion, and Robinson=s counsel did not object to that solution (by citing the 6th
Amendment or the Constitution generally, using the word Aconfrontation,@ or in any other way); instead he indicated his acceptance of
the solution.  Then, although Robinson
had nearly three months to serve a subpoena and guarantee Angela=s presence at the punishment portion, he did not serve her with the
subpoena so she did not appear.





[7]The State did not subpoena Angela for her testimony at the
adjudication hearing or the punishment hearing. 
See Tex. Code Crim. Proc. Ann. art. 24.03(a) (Vernon 2009)
(stating that when Aa witness has been served with a subpoena, attached or placed under
bail at the instance of either party in a particular case, such execution of
process shall inure to the benefit of the opposite party in such case in the
event such opposite party desires to use such witness on the trial of the case@).  Nothing in the record
indicates that the trial court interfered with Robinson=s attempt to subpoena Angela or that the trial court would have
disallowed Robinson to question Angela about the underlying sexual assault at
the punishment hearing if Robinson had obtained her presence at the hearing.





[8]The dissenting opinion extensively quotes a footnote from the
Texarkana Court of Appeals=s Rodriguez
v. State opinion because the dissenting opinion says that the Rodriguez opinion
addressed the continuance issue Ain a manner
which . . . comports with constitutional mandates.@  903 S.W.2d 405, 412 (Tex. App.CTexarkana 1995, pet. ref=d) (op. on reh=g); see Dissenting Op. at 10. 
But after the footnote in Rodriguez that the dissenting opinion
has quoted, the Texarkana court actually held that Rodriguez=s motion for continuance was nonetheless waived because it was not
sworn to.  Rodriguez, 903 S.W.2d
at 412 (AUntil such time as the Court of Criminal Appeals or the Texas
Legislature changes the [sworn and in-writing] requirement, this procedure must
be met.@). 





[9]Robinson has not cited any authority holding that he was entitled to
rely on Angela=s presence at the punishment hearingCeven though she did not receive a subpoena for that hearingCmerely because she testified at the adjudication hearing.  Also, Robinson=s attempt and failure to serve a timely subpoena shows that he did not
believe that Angela would appear at the punishment hearing merely because she
had appeared at the adjudication hearing. 
While the trial court indicated during the adjudication hearing that
Robinson could call Angela during the obviously distinct punishment hearing, it
did not guarantee her presence at that hearing.





[1]Washington v. State, 893 S.W.2d 107, 108B09 (Tex. App.CDallas 1995, no pet.) (citations omitted).





[2]Id.; see also Ricondo v. State, 634 S.W.2d 837, 842 (Tex. Crim.
App. 1981).





[3]Barfield v. State, 63 S.W.3d 446, 449B50 (Tex. Crim. App. 2001) (citations and selected
quotations omitted).





[4]See Washington, 893 S.W.2d at 108B09.





[5]Duhart v. State, 668 S.W.2d 384, 387 (Tex. Crim. App. 1984) (quotations omitted).





[6]II R.R. at 61.





[7]McDaniel v.  State, 3 S.W.3d
176, 179B80 (Tex. App.CFort Worth 1999, pet. ref=d) (citations
omitted).





[8]Long v. State, 742 S.W.2d 302, 320B21 (Tex. Crim.
App. 1987) (citations omitted), cert. denied,  485 U.S. 993 (1988), overruled on other
grounds, Briggs v. State, 789 S.W.2d 918, 924 (Tex. Crim. App.
1990).





[9]Euler v. State, 218 S.W.3d 88, 91 (Tex. Crim. App. 2007) (citations omitted).

 





[10]Ladd v. State, 3 S.W.3d 547, 575 (Tex. Crim. App. 1999) (citing Medina v.
California, 505 U.S. 437, 445B46, 112 S. Ct.
2572, 2577 (1992)), cert. denied, 529 U.S. 1070 (2000); see also Webb
v. State, 161 Tex. Crim. 442, 278 S.W.2d 158, 160 (1955) (stating that the
term due process Aincludes and means that an accused shall, in a criminal case, be
accorded that fundamental fairness necessary to the due administration of justice@).





[11]See Tex. R. App. P. 44.2(a).





[12]Tex. Code Crim. Proc. Ann.
art. 29.13 (Vernon 2006).





[13]301 S.W.3d 276 (Tex.
Crim.  App.  2009).





[14]See majority op. at 9.





[15]Rodriguez v. State, 903 S.W.2d 405, 412 n.5 (Tex. App.CTexarkana 1995, pet. ref=d).

 





[16]775 S.W.2d 718, 721 (Tex.
App.CDallas 1989, no pet.).





[17]Id.





[18]Villegas v. Carter, 711 S.W.2d 624 (Tex. 1986).





[19]Id. at 625B26.





[20]See id. at 625B27.





[21]See id.





[22]Cooks v. State, 844 S.W.2d 697, 730 (Tex. Crim. App. 1992) (citations omitted), cert.
denied, 509 U.S. 927 (1993).

 





[23]Gandy v. Alabama, 569 F.2d 1318, 1322B23 (5th Cir.
1978).















 [CB1]Majority
opinion by Justice Livingston; Dissenting opinion by Justice Dauphinot